WESTERN DIST.
*Oct.* 1838.

WALTON
*vs.*
CATHOLIC
CONGREGATION.

WALTON *vs.* CATHOLIC CONGREGATION.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF NATCHITOCHES, THE JUDGE OF THE FIFTH PRESIDING.

The Church Wardens of the Catholic Congregation of St. Francis, were authorized to raise the sum of twenty thousand dollars, by lottery, and to draw as many as three classes; with the right to sell their privileges, which they did, to another person, who also sold his rights and privileges to F, who drew as many as twenty classes; *Held*, that there was no privity between the Church Wardens and F, and they were not liable for the payment of the prizes drawn under his management.

This is an action to recover half the prize of ten thousand dollars, drawn to a lottery ticket, No. 13, 10, 23, in a lottery

WESTERN DIST.   drawn on account of the defendants, in New-Orleans, the
Oct. 1838.      28th July, 1832.   The plaintiff alleges, that in February,
                1827, the legislature passed an act, conferring on " The
WALTON          Catholic Church of St. Francis, of Natchitoches, the power,
vs.             and authorizing them to raise the sum of twenty thousand
CATHOLIC
CONGREGATION.   dollars, by lottery ; and further authorized them to draw as
many classes as were necessary, and to sell and dispose of
the privileges granted by the act, to others, for money, who
were, in like manner, authorized to draw said lottery, and
that in pursuance of this authority, said church or congrega-
tion, did sell for a large sum of money, the privilege of draw-
ing said lottery, to one Jean Baptiste Faget, of New-Orleans,
who sold the ticket in question, being marked A, in class
No. 20 ; that this ticket entitled the holder to such prize as
should be drawn to its numbers, if demanded within twelve
months, subject to a deduction of fifteen per cent.

He further shows, that he is owner of one half of this
ticket, which drew the prize of ten thousand dollars, and
that he has demanded payment of said Faget, who has failed
to pay, even after being prosecuted to judgment.

He further shows, that the 4th section of the act authoriz-
ing the lottery, requires that " the *managers* should give
security to the satisfaction of the governor, conditioned that
they pay the prizes drawn to the numbers sold, which
security the managers failed to give ; that defendants did
sell their right or privilege, either to Faget or some one else,
who managed the lottery, sold the tickets, and had the
lottery drawn ; and whether the defendants sold their rights
or not, is wholly immaterial, as a lottery was got up under
the act empowering them to make a lottery, and Faget was
manager, who sold tickets, and under their superintendence
the lottery was drawn with their knowledge and consent,
and they are liable in any court for the prizes drawn.

He further states, that said church or congregation,
fraudulently neglected to appoint commissioners, and give
the security required by the act authorizing the lottery ; and
that they are bound in law, and by the conditions of said
act, as well as in justice and equity to pay the net proceeds

WESTERN DIST.
*Oct.* 1838.

WALTON
*vs.*
CATHOLIC
CONGREGATION.

of said prize, or the one half thereof, amounting to four thousand two hundred and fifty dollars, for which he prays judgment.

The defendants pleaded a general denial, and averred that they were authorized by an act of the legislature, to raise the sum of twenty thousand dollars, by lottery, and that the third section empowered them to sell and dispose of the privileges granted them, and that in pursuance thereof, they did sell it ; that they are in no manner responsible for the payment of the prizes drawn in said lottery, but that the persons who received the proceeds of the sales of tickets, and who gave security as the law required, are alone bound ; that they have sold their privileges for the purpose of building a church, which they were empowered to do by this act.

Upon these issues and pleadings, the cause was tried. The following is the act of the legislature, authorizing the Catholic Church of St. Francis, of Natchitoches, to draw the lottery in question :

" *Be it enacted, &c.,* That the church wardens of the Roman Catholic Church of St. Francis, of Natchitoches, be authorized and empowered, and they are hereby authorized and empowered, to raise, by a lottery, the said sum of twenty thousand dollars, for the purpose of enabling them to erect and build a church, and the necessary edifices, for the use of said congregation.

" SECT. 2. *And be it further enacted,* That the said church wardens, shall choose three discreet persons, who shall act as managers or commissioners of said lottery, to make a scheme for said lottery, and sign and sell the tickets, and superintend the drawing thereof ; to pay the prizes drawn therein ; and they shall possess full power to do all things for the more complete execution of the objects contemplated by this act.

" SECT. 3. *Be it further enacted,* That the said church wardens are hereby authorized and empowered to sell, or in any other manner to dispose of the privilege and authority granted by virtue of this act, to any person or persons, on such terms as by them may be deemed most expedient.

WESTERN DIST.
Oct. 1838.

WALTON
vs.
CATHOLIC
CONGREGATION.

"SECT. 4. *And be it further enacted*, That if the said sum of twenty thousand dollars, shall not be raised by said church wardens, by the first class of said lottery, the said church wardens are hereby authorized and empowered to commence and carry on a second and third class, until the before mentioned sum of twenty thousand dollars, be raised by said lottery; provided, that the managers of the said lottery, shall give security to the satisfaction of the governor, conditioned that they will pay the prizes that may be drawn in the said lottery, or return the money received for tickets, in case the same shall not be drawn in two years from the time they commence selling the tickets.

"SECT. 5. *And be it further enacted*, That the security required by this act, need not be given for the whole amount of the lottery, but that it shall be sufficient if good security be given to the amount of the whole prizes of such tickets in said lottery."

The evidence showed, that the church wardens sold and transferred to one J. F. Ribetti, for the sum of four thousand dollars, all the rights which they acquired under this act. Ribetti sold and transferred all the right he acquired, to one J. B. Faget, who proceeded to draw the lottery, in which the prize sued for was drawn, even to twenty classes. There does not appear to have been any security given by Faget. It was admitted the plaintiff had sued Faget, and prosecuted him to insolvency, without being able to recover any thing.

The jury returned a verdict for the defendants, and from judgment rendered thereon, the plaintiff appealed.

*Brent* and *Winn*, for the plaintiff.

1. In this case plaintiff contends, that a special trust was reposed in the congregation by the act of 1826; that this trust was subject to certain restrictions and provisions, and unless they have been complied with, the responsibility of the congregation still continues. It is true that the act gives the congregation the power to sell their privilege, but this power, if exerted, certainly cannot absolve them from the obligation to see that all the requirements of the act are ful-

WESTERN DIST.
*Oct.* 1838.

WALTON
*vs.*
CATHOLIC
CONGREGATION.

filled. In the framing of the act, the legislature knew no other party than the defendants in this suit, and of course expected no one else to comply with the conditions therein imposed. If, therefore, they have failed in this respect, they are still to be held responsible.

2. In the 4th section of the act, the legislature required that security should be given to the satisfaction of the governor, that the prizes should be paid, or the money returned in case the lottery should not be drawn in two years. The evidence establishes that this security was *not* given. We, therefore, hold the congregation answerable for a manifest dereliction of duty.

3. If the privilege had not been sold, and if the congregation had proceeded to draw the lottery, there could have been no doubt, but what they acted illegally in not furnishing the required security, for so careful was the legislature that the people should not suffer from this species of licensed gambling, that it exacted security from a *religious* and *wealthy* corporation. Now can it be supposed, that upon a transfer of such a privilege from such a body, to perhaps a needy and irresponsible adventurer, that the legislature conceived that all necessity for security had ceased to exist, and withdrew the assurance which it had given the public, when the lottery was under the superintendence of the church. Such a construction would bring us' to the absurdity of supposing that the legislature required security where none was needed, and voluntarily relinquished it, where it was all essential. If the corporation had have exacted security from the purchaser, they would have gratified the law and would not be responsible. Our recourse would have then been against the security.

4. In a case of this kind, a power to sell, must be construed into a power only to sell the profits. See 12 *Wheaton's Reports*, 40. This is the only construction which can comport with right and justice.

5. The title of the lottery which was actually drawn, was the Natchitoches Church Lottery. It purported to be one belonging to a religious corporation, and its proceeds to

WESTERN DIST.
Oct. 1838.

WALTON
vs.
CATHOLIC
CONGREGATION.
be applied to religious purposes. Many were doubtless induced, from this circumstance, to purchase tickets, and many more, perhaps, were induced to do so from seeing in the act, that security for fair dealing was required to be given to the satisfaction of the governor. But if they were deceived in both of these respects; if it was not the Natchitoches Church Lottery, although called so; and if that provision as to security is to be a dead letter, then there has been a gross and iniquitous fraud practised upon the people.

*Dunbar,* for defendants.

The catholic congregation sold their privileges in this lottery, as they were authorized to do by the act of incorporation. It was the duty of the purchaser, who stood in their place, to have managers appointed, and security given. If he has failed to do this, the congregation are not responsible; by the purchase, he took upon himself all the obligations of the congregation, as if they had drawn the lottery themselves. In no case were they to give security; it was only the managers who drew the lottery.

2. If the congregation were ever responsible, that liability is gone, as prescription has run in their favor. *Louisiana Code,* 2294–95, 3501. 6 *Martin, N. S.,* 669. 2 *Kent's Commentaries,* 299. 6 *Peters's Condensed Reports,* 439. 5 *Peters,* 395.

3. The act of the legislature did not authorize the drawing of more than three classes, whereas the ticket sued on purports to have been drawn in class number twenty.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff sues to recover of the corporation the amount of a prize drawn by him, in the 20th class of a lottery authorized by an act of the legislature, for the benefit of the latter. He alleges, that he purchased the ticket of one Faget, who, failing to pay the prize, was sued by him, and a judgment recovered, but which has never been satisfied. He further alleges, that the corporation fraudulently neglected to appoint commissioners, and to give the security required

by the act of the legislature authorizing the lottery, and, thereby, as well as by justice and equity, became liable to pay him the prize. The plaintiff, in a supplemental petition, further alleges, that the corporation sold their privilege, but that the lottery was got up under the management of Faget, and was drawn with the knowledge and consent of the defendants, who are, nevertheless, liable for the prize to which his ticket was entitled.

WESTERN DIST.
*Oct.* 1838.

WALTON
*vs.*
CATHOLIC
CONGREGATION.

The defendants answered by admitting that they had been authorized by the legislature to raise twenty thousand dollars by lottery : but that they were authorized by the same act, to sell, or otherwise dispose of the privilege thus granted, and that they did sell their privilege, but not to Faget, and they deny their liability to pay. They further plead the prescription of one year.

The facts of the case are not contested. The defendants sold their privilege to one Ribetti, who afterwards sold it to J. B. Faget, of whom the ticket was purchased, in the 20th class of the church lottery, and drew one half of the capital prize of ten thousand dollars.

The act of the legislature in question, authorized the church wardens to raise by lottery, the sum of twenty thousand dollars, for the purpose of building a church, and other necessary edifices, for the use of the congregation. It was made their duty to appoint three discreet persons, as managers, to make a scheme for said lottery, and sign and sell the tickets, and superintend the drawing, and pay the prizes, with full powers to do all things for the more complete execution of the objects contemplated by the act.

It was further provided, that if the sum of twenty thousand dollars should not be raised by the church wardens, by the first class of the lottery, they should be authorized to " commence and carry on a second and third class, until the before mentioned sum of twenty thousand dollars should be raised," provided, that the managers should be required to give security, to the satisfaction of the governor, that they would pay the prizes, &c. The third section of the act authorized the church wardens to sell, or otherwise dispose of the privilege

WESTERN DIST.
Oct. 1838.

WALTON
vs.
CATHOLIC
CONGREGATION.

The church
wardens of the
Catholic congre-
gation of St.
Francis, were
authorized to
raise the sum of
twenty thousand
dollars by lotte-
ry, and to draw
as many as three
classes, with the
right to sell their
privileges,
which they did
to another per-
son, who also
sold his rights
and privileges
to F, who draws
as many as twen-
ty classes; Held,
that there was no
privity between
the church war-
dens and F, and
they were not li-
able for the pay-
ment of the pri-
zes drawn un-
der his manage-
ment.

and authority granted by the act, to any person or persons, on such terms as by them might appear most expedient.

It has been contended, on the part of the defendants, that it was the managers who should be appointed by them, in the event of their proceeding to draw a lottery, for their benefit, and at their risk, who were to give the security required by the act, and that having sold their privilege, as they were authorized to do, they were not bound either to appoint managers, or to cause them to furnish security. It does not appear to us that there was any privity between the church wardens and Faget, of whom the ticket was pur- chased. They transferred all their rights and privileges under the act of the legislature, to Ribetti, subject to the conditions and restrictions contained in that act, and he sold to Faget, subject to the same restrictions. It was clearly not the duty of the church wardens to require of Faget to furnish security to the satisfaction of the governor, inasmuch as he was neither their agent, nor their transferree. There is certainly no evidence to show any fraudulent neglect on the part of the church wardens, to appoint commissioners, and to give the security required, as alleged by the plaintiff in his petition. They did nothing more than they had a right to do, in selling their privilege, subject to its legal restrictions.

There is also great force in ;the objection, that the act authorized but three classes of the lottery, and that the ticket in question purports to have been one in the twentieth class. The church wardens were authorized by the act to raise twenty thousand dollars, by a lottery, and if that sum should not be raised by the first class, they were authorized to com- mence and carry on a second and, a third class, until that sum should be raised, &c. This right to draw even a second class, depended on the condition that the sum con- templated to be raised had not been realized by the first. The words of the act do not appear to us to authorize more than three classes.

The case against the corporation of Washington, cited in argument, was decided upon different principles. That cor-

poration appears to have been rendered liable, on the ground that Gillispie was acting under them in drawing a lottery, in pursuance of a general authority conferred by the city charter. In the present case it does not appear that Faget held himself out to the world as the agent of the church wardens, or as a manager appointed or authorized by them. Persons purchasing tickets from him had an opportunity to inquire into his rights. He had purchased of Ribetti, by notarial act, passed before Carlile Pollock. It would have been discovered that the church wardens had parted with all their rights, and that, as he was in no manner subjected to their control, the purchasers of tickets must look to him for the payment of the prizes drawn.

This view of the case renders it unnecessary to notice the plea of prescription.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF RAPIDES, THE JUDGE THEREOF PRESIDING.